[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-11086

Non-Argument Calendar

_____

LILLIE M. MIDDLEBROOKS,

Plaintiff-Appellant,

*versus*

EQUIFAX, INC.,
EQUIFAX INFORMATION SERVICES,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

D.C. Docket No. 1:20-cv-01825-SCJ

_____

Before: WILSON, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

Lillie Middlebrooks, proceeding *pro se*, appeals from the district court's orders granting summary judgment in favor of Equifax, Inc. ("EFX") and Equifax Information Services, LLC ("EIS") (collectively, "Equifax") and denying her Federal Rule of Civil Procedure 60(b) motion to vacate the district court's order placing unredacted documents filed by Equifax under seal and ordering Equifax to file reacted copies of the documents. She also challenges the district court's denial of her motions for sanctions against Equifax for Equifax's failure to timely identify witnesses and file initial disclosures. After careful review, we affirm.

## I.

Middlebrooks is a consumer. In 2018, she disputed two accounts on her Equifax credit report and sought to obtain a home mortgage. This case arises out of these events.[1]

---

[1] Because we review the district court's grant of summary judgment in favor of Equifax, we recount the facts in evidence in the light most favorable to Middlebrooks, the nonmovant. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1263–64 (11th Cir. 2010). We note where facts are disputed.

Much of the evidence we describe here comes from a declaration by Equifax's Litigation Support Manager, Celestine Gobin. Middlebrooks argues

23-11086                    Opinion of the Court                    3

EFX, a holding company, owns EIS and uses it as a storehouse of consumer credit information. Together, they comprise Equifax, which has three functions relevant here. First, Equifax collects and stores consumer credit information. Equifax collects credit information from "data furnishers"—entities that report consumer credit information. Doc. 122-1 at 6.[2] Data furnishers are subject to a due diligence process, must certify that they will abide by the Fair Credit Reporting Act ("FCRA"), and must sign an agreement with Equifax in which they agree to provide accurate data, update data regularly, and have a process for verifying information. EIS stores the data Equifax collects from data furnishers.

Second, Equifax responds to requests for a consumer's credit information. Equifax provides "consumer disclosures" in response to requests by consumers. And it provides "consumer reports," or "credit reports," in response to requests by third parties, such as a credit grantor. These reports and disclosures summarize the consumer's credit history. Doc. 122-1 at 5.

Third, Equifax investigates consumer disputes about credit information. A consumer may contact Equifax to dispute information reported on her consumer report or disclosure. When Equifax receives a dispute, EIS makes an electronic record of it and any of Equifax's subsequent actions relating to it. Equifax

---

in this appeal that the district court erred in considering this declaration. For the reasons set forth in Part III, we reject Middlebrooks's challenge to the court's consideration of this evidence.

[2] "Doc." numbers are the district court's docket entries.

investigates the dispute, including by reviewing information and documents the consumer supplies and, if necessary, by asking the data furnisher to investigate and advise as to whether the information it has provided is accurate. If upon investigation Equifax learns that a consumer's credit information needs to be changed, Equifax changes it. Regardless of whether it changes a consumer's information upon the conclusion of its investigation, Equifax notifies the consumer of the results of the investigation.

Middlebrooks sent a letter to Equifax disputing two collection accounts from data furnisher Fair Collections & Outsourcing ("FCO") that were being collected on behalf of a creditor, Lasalle Investment Management. Middlebrooks stated that two FCO collection accounts, one for $1,000 and one for $189, were not hers and were fraudulently placed in her consumer credit information file, as she had never entered into a contract with Lasalle. Middlebrooks did not include any documentation like a police report to support her fraud allegation.

Equifax opened a case for investigation based on Middlebrooks's letter, notified FCO of the dispute, and sent FCO Automated Consumer Dispute Verification ("ACDV") forms requesting investigations into each account. FCO returned the ACDV forms with its investigation results, advising that the $1,000 debt should be deleted from Middlebrooks's file but that the $198 debt belonged to Middlebrooks and was reported accurately. On both forms, FCO listed its "Responder" as "Cristina Manalo." Doc. 122-1 at 18, 20. FCO provided Equifax with the consumer information

it relied upon to conclude that the $198 collection account was valid, and Equifax, as part of its investigation, confirmed that the information FCO provided matched information it had collected on Middlebrooks. Equifax then informed Middlebrooks that it had deleted the $1,000 debt but not the $198 debt.

Middlebrooks then filed a complaint alleging that Equifax violated the FCRA's requirements that a credit reporting agency follow reasonable procedures (1) "to assure maximum possible accuracy of the information" about a consumer in her credit report, 15 U.S.C. § 1681e, and, (2) when a consumer initiates a dispute as to the accuracy of information, "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate," *id.* § 1681i(a)(1)(A). The complaint alleged that Middlebrooks sought a home mortgage from three lenders and that Equifax provided each lender a credit report with the $198 delinquent and unpaid collection account, an amount resulting in a lower credit score than should have been reported. As a result of this incorrect credit score, the complaint alleged, Middlebrooks received unfavorable mortgage interest rates and borrowing limits. The complaint also alleged that Middlebrooks again disputed the $198 account in 2020 and that Equifax deleted the charge from her credit file.

This case thereafter "followed a frustrating path," Doc. 142 at 4, and we recount only the events relevant to this appeal. Discovery began, closed, was reopened, and then closed again. Eventually, with Equifax's motion for summary judgment pending, Middlebrooks moved for sanctions against Equifax. Middlebrooks

asserted that Equifax failed to timely provide initial disclosures as required by Federal Rule of Civil Procedure 26(a)(1) and also failed to produce any documents in discovery, thereby depriving her of the opportunity to prepare an effective defense to the summary judgment motion. Specifically, Middlebrooks argued that Equifax failed to provide initial disclosures until after the close of discovery and in so doing failed to identify a key witness, Equifax's Litigation Support Manager Celestina Gobin. Middlebrooks asked the district court to strike Gobin's declaration, several paragraphs in Equifax's statement of material facts, and documents supporting the motion for summary judgment, including the ACDV forms.

Equifax admitted that it had failed to provide initial disclosures until after the close of discovery. But, it argued, the oversight was inadvertent, and, in any event, it had identified Gobin as a potential witness in interrogatory responses provided before the close of discovery. Thus, Equifax argued, Middlebrooks was on notice that Gobin was likely to have discoverable information. Equifax stated that it was willing to withdraw its pending motion for summary judgment and refile it after Middlebrooks was afforded an opportunity to conduct additional discovery.

A magistrate judge concluded that Equifax's failure to make initial disclosures by the deadline was not "substantially justified" but "at least arguably harmless." Doc. 96 at 6. The judge further noted that Equifax had offered to withdraw its pending motion for summary judgment and reopen discovery for Middlebrooks. This remedy, the judge found, "would substantially eliminate any

prejudice" Middlebrooks suffered. *Id.* Thus, the judge ordered that Equifax's pending motion for summary judgment be withdrawn, that discovery be reopened "for the sole purpose of allowing [Middlebrooks] the opportunity to depose any witnesses listed in Equifax's belatedly provided initial disclosures," and otherwise denied Middlebrooks's motions. *Id.* at 8. Over Middlebrooks's objections, the district court adopted the magistrate judge's order.

At the close of the reopened discovery period (during which time Middlebrooks did not depose Gobin), Equifax again moved for summary judgment. As relevant to this appeal, Equifax argued that both of Middlebrooks's FCRA claims could succeed only if she had put forth evidence that her credit report contained an inaccuracy, and she had offered only conclusory allegations to that effect. Equifax attached to its motion several unredacted, unsealed documents that contained personal identifying information, including Middlebrooks's full social security number and date of birth. Upon a motion by Middlebrooks, the magistrate judge ordered the offending documents sealed and further ordered Equifax to file redacted versions of the documents in compliance with the court's relevant standing order and Federal Rule of Civil Procedure 5.2.

Middlebrooks moved for relief from the magistrate judge's order under Rule 60(b), arguing that the judge had erred in permitting Equifax to file (and rely upon) redacted and sealed documents.[3]

---

[3] Middlebrooks moved for relief pursuant to Rule 60(b)(1), which permits a district court to relieve a party from a final judgment, order, or proceeding

The proper relief, she argued, would have been for the exhibits to be "completely stricken" from the court's docket. Doc. 129 at 2. She also argued that "the district court was mandated to destroy and expunge" the documents. *Id.* at 16. The magistrate judge denied Middlebrooks's motion, reasoning that because courts have authority to order documents to be sealed or redacted either by motion or *sua sponte*, the court did not err in ordering the exhibits sealed or filed redacted.

The magistrate judge also issued a report and recommendation ("R&R") recommending that Equifax's motion for summary judgment be granted. The judge concluded that despite Middlebrooks's many protestations about Equifax's litigation strategy, "she offers no evidence that there was an inaccuracy in her report." Doc. 131 at 9.

Middlebrooks objected to both orders. The district court, however, adopted the R&R, granted summary judgment in favor of Equifax, and denied Middlebrooks's Rule 60(b) motion. As to the summary judgment motion, the district court agreed with the magistrate judge that Middlebrooks "did not provide the Court with any evidence showing that the Credit Report was inaccurate so as to create a material dispute of fact." Doc. 142 at 29. Because both of Middlebrooks's claims could succeed only upon a finding that Equifax's report contained factually inaccurate information, the

---

because of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1).

court concluded that she could not as a matter of law succeed on either claim.

The district court concluded that Middlebrooks's Rule 60(b) motion was due to be denied. The court explained that sealing and ordering redaction of the offending documents remedied Middlebrooks's harm and that "there is no additional benefit in destroying or expunging these documents." *Id.* at 33. Plus, the court explained, destroying documents "is inconsistent with the common-law right of access to judicial proceedings." *Id.* at 34. Finally, the court concluded that the magistrate judge, "pursuant to his inherent authority to control his docket, could *sua sponte* seal documents" and did not clearly err in ordering other documents filed redacted. *Id.*

Middlebrooks has appealed, challenging the district court's refusal to exclude Gobin's declaration and related documents, denial of Rule 60(b) relief, and grant of summary judgment in favor of Equifax.

## II.

We review a district court's decision on whether and how to sanction a party under Federal Rule of Civil Procedure 37(c)(1) for an abuse of discretion. *Hearn v. McKay*, 603 F.3d 897, 903 (11th Cir. 2010). We also review the district court's denial of a Rule 60(b) motion for an abuse of discretion. *Fed. Trade Comm'n v. Nat'l Urological Grp., Inc.*, 80 F.4th 1236, 1241 (11th Cir. 2023). This standard gives the district court a "range of choice[,] so long as that choice does not constitute a clear error of judgment." *Fuentes v. Classica Cruise Operator Ltd, Inc.*, 32 F.4th 1311, 1321 (11th Cir. 2022) (alteration and

internal quotation marks omitted). "In other words, a district court has broad, yet not unbridled, discretion in deciding whether to impose evidentiary sanctions." *Id*. (internal quotation marks omitted). "A district court abuses its discretion only when it misapplies the law or bases its decision on findings of fact that are clearly erroneous." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1313 (11th Cir. 2011).

We review the district court's grant of summary judgment *de novo*. *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010). Summary judgment is appropriate if, construing the evidence in the light most favorable to the nonmovant, the movant shows that there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. *Id*. at 1263–64. The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (alteration and internal quotation marks omitted). "The burden then shifts to the non-moving party to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings." *Id*. (internal quotation marks omitted). A plaintiff must point to "specific facts in the record that could lead a rational trier of fact to find in his favor." *Beard v. Banks*, 548 U.S. 521, 535 (2006) (internal quotation marks omitted).

### III.

Middlebrooks mounts three challenges on appeal. First, she argues that because Equifax failed to timely disclose Gobin as a witness as required by the Federal Rules of Civil Procedure, the district court should have excluded from the record Gobin's declaration and exhibits like the ACDV form attached to it when the court considered Equifax's motion for summary judgment. Second, Middlebrooks challenges the district court's grant of summary judgment in favor of Equifax, arguing that she did not bear the burden to prove that her credit report contained an inaccuracy.[4] Third, she challenges the district court's denial of her Rule 60(b) motion, arguing that Equifax had attempted a "trial by ambush" and so it

---

[4] Middlebrooks also argues that the district court erred in treating EFX and EIS as one entity for purposes of determining whether either, or both, was a credit reporting agency and therefore subject to the FCRA. Middlebrooks misses the point. It is true that EFX maintained in the district court that it was not a credit reporting agency, and that Middlebrooks disputed that fact. But it is also true, as the magistrate judge noted, that Equifax—that is, both EFX and EIS—would be entitled to summary judgment *even if* EFX was a credit reporting agency because Middlebrooks failed to present any evidence showing that her credit report contained an inaccuracy. In other words, even construing the disputed fact regarding EFX's status as a credit reporting agency in the light most favorable to Middlebrooks, Middlebrooks could not prevail. Because, as we explain above, we agree that Middlebrooks offered no evidence of an inaccuracy, we can make the same assumption in Middlebrooks's favor regarding EFX's status as a credit reporting agency.

12                    Opinion of the Court                    23-11086

should have been subject to greater sanctions. Appellant's Br. at 53. As we explain below, we reject Middlebrooks's arguments.[5]

Federal Rule of Civil Procedure 26 requires a party to disclose via initial disclosures any individual likely to have discoverable information that the party may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(i); *see* Fed. R. Civ. P. 26(e) (requiring parties to supplement incomplete disclosures in a timely manner). The district court, by adopting the magistrate judge's order, found Equifax in violation of Rule 26. Federal Rule of Civil Procedure 37 gives a district court "discretion to decide how to respond to a litigant's failure to make a required disclosure under Rule 26." *Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 593 (11th Cir. 2019). Specifically, Rule 37 provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e)," the district court may exclude that information or witness "unless the failure was substantially justified or is harmless," or, "instead of this sanction, . . . may impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1), (c)(1)(C).

---

[5] Middlebrooks advances several additional arguments on appeal, including that the district court erroneously found that she had failed to alert the court to Equifax's discovery violations; that 45 days was insufficient time for her to prepare to depose Gobin; that she would not have been able to depose Gobin effectively because Equifax allegedly did not produce her complete credit file or a complete copy of its FCRA compliance practices; that Gobin's declaration was inadmissible for summary-judgment purposes because her signature was typed, not handwritten; and that Equifax waived any argument that its procedures were reasonable. We have carefully considered these arguments and find no merit in them.

Here, the district court did not abuse its broad discretion in fashioning a sanction lesser than exclusion. *See Fuentes*, 32 F.4th at 1321. Even assuming Equifax's failure to timely disclose Gobin as a witness was neither substantially justified nor harmless, the court rendered it harmless by reopening the discovery period so that Middlebrooks could depose Gobin. That Middlebrooks did not depose Gobin during that period does not render the remedy to the violation meaningless.

Middlebrooks argues that Equifax's violation of the district court's scheduling order (failing to timely disclose Gobin as a witness) was not good cause for the court's modification of the scheduling order. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Good cause or not, modification of the scheduling order was within the district court's inherent authority. *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (explaining that a district court possesses "inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases" (internal quotation marks omitted)). Indeed, nothing in the Federal Rules of Civil Procedure or our case law prohibited the district court from remedying a party's harm from an opposing party's violation of a scheduling order by modifying the scheduling order to give the harmed party (and the harmed party alone) more time to conduct discovery. Even looking at the district court's decision to reopen discovery for Middlebrooks through the lens of Rule 16(b)'s good-cause requirement, it is easy to see that Equifax's discovery violation

supplied good cause for a remedy. At bottom, Middlebrooks quibbles with the remedy the district court chose. But because the district court's sanction was squarely within its broad range of choices, we will not second guess it. *Fuentes*, 32 F.4th at 1321.

Middlebrooks further argues that the Gobin declaration should have been excluded because it relied upon the ACDV forms, and the "Responder" listed on those forms, Manalo, was never disclosed to Middlebrooks as a witness. For the same reason, she similarly argues that the ACDV forms should have been excluded. As the district court explained, Manalo was not a witness, and so Equifax was not required to disclose her under Rule 26. *See* Fed. R. Civ. P. 26(a)(1) advisory committee's note to 2000 amendment ("A party is no[t] . . . obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use."). Rather, Manalo merely prepared business documents upon which Gobin relied. And since Middlebrooks had an opportunity to depose Gobin, she had the opportunity to question Gobin's reliance on those documents. We also note, as did the district court, that Middlebrooks received a copy of the ACDV forms well before the close of discovery, so she cannot argue that Equifax failed to disclose the documents themselves.

Given that the district court permissibly declined to exclude the Gobin declaration and ACDV forms, we consider those documents in reviewing the district court's summary judgment order. The FCRA provides that a credit reporting agency preparing a consumer report must follow reasonable procedures to assure the

maximum possible accuracy of the information relating to the person about whom the report relates. 15 U.S.C. § 1681e(b). Further, if a consumer disputes the completeness or accuracy of any information contained in her file and she notifies the credit reporting agency of the dispute, the agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." *Id*. § 1681i(a)(1)(A). To establish a violation of either of these FCRA provisions, the consumer must present evidence tending to show that the agency prepared a report containing inaccurate information. *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944 (11th Cir. 2021) (setting forth the elements of a prima facie violation of § 1681e); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991) (setting forth the elements of a claim under § 1681i), *superseded by statute on other grounds as recognized in Santos v. Healthcare Revenue Recovery Grp., LLC.*, 90 F.4th 1144, 1156 (11th Cir. 2024).

We agree with the district court that, in response to Equifax's evidence that the $198 collection amount indeed belonged to Middlebrooks, Middlebrooks offered no evidence that this was inaccurate. Although Middlebrooks alleged in her complaint that Equifax deleted the $198 collection account a couple of years after she disputed it and the $1,000 account, she offered no evidence to support this allegation. And our case law refutes Middlebrooks's argument that she was not required to offer any evidence to show an inaccuracy. An inaccuracy on her credit report is an essential element of both of Middlebrooks's claims. 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A). Equifax bore its initial burden to show

that the report was accurate. At that point, the burden shifted to Middlebrooks to offer some evidence to refute Equifax's evidence. *Jones*, 683 F.3d at 1292; *Beard*, 548 U.S. at 535. This she did not do. Thus, the district court properly granted summary judgment in Equifax's favor. [6]

Lastly, the district court did not abuse its discretion in denying Middlebrooks's Rule 60(b) request to vacate the order sealing Equifax's unredacted filings and ordering Equifax to file redacted versions of the documents. Middlebrooks argues that the district court's order permitting Equifax to file documents containing her personal identifying information under seal and with redactions constituted a "trial by ambush," Appellant's Br. at 53, but she fails to explain how she was ambushed by the court's order. Middlebrooks knew the content of the filings when Equifax filed its motion for summary judgment. The court was within its authority to order the offending documents sealed and redacted. *See Perez-*

---

[6] For the first time in her reply brief, Middlebrooks argues that Equifax cannot assert that she failed to show an inaccuracy in her credit report because Equifax allegedly did not produce her credit file in discovery. She also argues that the accuracy of the credit report is an "affirmative defense" that Equifax waived. Reply Br. at 16. We will not consider arguments raised for the first time in a reply brief. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682–83 (11th Cir. 2014); *see Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (explaining that our rule applies even to a brief filed by a *pro se* litigant). Even if we were to consider these arguments, however, we would reject them. The record shows that Middlebrooks was in possession of her credit file in June 2018, before she filed suit and long before the close of discovery. And, as we set forth above, the existence of an inaccuracy is an element for stating a claim under the FCRA, not an affirmative defense.

23-11086          Opinion of the Court                    17

*Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1235 (11th Cir. 2013). Thus, Middlebrooks has failed to show any abuse of the district court's discretion.

For the above reasons, we affirm.[7]

**AFFIRMED.**

---

[7] Middlebrooks's "Motion to Transfer Appeal to the Ninth Circuit Court of Appeals" is DENIED. The appeal is properly in this Court because Middlebrooks filed her action in the Northern District of Georgia.